# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CARNELIUS McCALL, individually and on behalf of all others similarly situated,** ] ] ] ] | |
| **Plaintiff,** ] ] | |
| v. ] ] | **2:22-cv-1390-ACA** |
| **ACER AMERICA CORPORATION,** ] ] | |
| **Defendant.** ] | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carnelius McCall filed this putative class action lawsuit against Defendant Acer America Corporation, which manufactures, markets, and sells computers that use an allegedly defective battery. (Doc. 1 at 1 ¶ 1, 5 ¶ 42). Acer moves to compel arbitration and dismiss this case, under 9 U.S.C. §§ 4, 6. (Doc. 8). Because there is no genuine dispute that Ms. McCall agreed that an arbitrator should decide the arbitrability of her claims, the court **GRANTS** the motion to compel arbitration. The court **DENIES** the motion to dismiss but instead **STAYS** the case. The court **ADMINISTRATIVELY CLOSES** the case subject to reopening on the motion of either party following arbitration.

I.   DISCUSSION

When deciding a party's motion to compel arbitration, the court uses a "summary judgment-like standard" to determine whether there is a "genuine dispute as to any material fact concerning the formation of . . . an [arbitration] agreement." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) (quotation marks omitted). Accordingly, although this is a motion to dismiss, the court may consider evidence outside the pleadings. *See id.*; *see also Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016).

Ms. McCall alleges that in May 2020, she purchased an Acer computer and, after several months of "normal usage," the battery failed. (Doc. 1 at 4–5 ¶ 37, 5 ¶ 42). She expressly states that she "relied on the sale of the Product, words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, and instructions, made by [Acer] or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing. (*Id.* at 5 ¶ 39). As a result, she asserts violations of various States' consumer fraud acts; breaches of express warranty, implied warranty of merchantability, and implied warranty of fitness for a particular purpose; violation of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; negligent misrepresentation; fraud; and unjust enrichment. (*Id.* at 7–10).

Acer has presented the following evidence. Acer includes, with its computers, a paper copy of its warranty; it also has the warranty available online. (Doc. 9-1 at 2 ¶¶ 2–4). The computer cannot be shipped unless the paper copy of the warranty (and other documentation) is placed in the computer's packaging and scanned. (*Id.* at 2–3 ¶¶ 4–7). The online copy of the warranty is available on the Acer.com website. (*Id.* at 2 ¶¶ 2–3; *id.* at 6). The first page of the limited warranty states, in all caps and in bold font: "**THIS AGREEMENT CONTAINS A MANDATORY AND BINDING ARBITRATION PROVISION IN WHICH YOU AND ACER AGREE TO RESOLVE ANY DISPUTES BETWEEN YOU AND ACER BY BINDING ARBITRATION.**" (Doc. 9-1 at 10). The paragraph refers the reader to section 9, which in turn provides, in all caps and in bold font:

> **THIS AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN YOU AND ACER WILL BE RESOLVED BY MANDATORY AND BINDING ARBITRATION TO THE FULLEST EXTENT PROVIDED BY LAW. YOU AND ACER THEREFORE GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS UNDER THIS AGREEMENT.**

(*Id.* at 14). Section 9 defines a "dispute" as "any dispute, controversy, or claim arising out of or relating to (i) this Agreement, its interpretation, or the breach, termination, applicability or validity thereof; (ii) the related order for, purchase, delivery, receipt or use of any product or service from Acer; or (iii) any other dispute arising out of or relating to the relationship between You and Acer." (*Id.* at 15).

Section 9 further provides that arbitration "will be resolved exclusively and finally by binding arbitration administered by the American Arbitration Association (AAA) and conducted in accordance with the AAA's Supplementary Procedures for Consumer-Related Disputes of the Commercial Arbitration Rules and the Consumer Due Process Protocol." (*Id.* at 14). The Commercial Arbitration Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Doc. 9-1 at 59).

In addition to the limited warranty, setting up the computer for the first time requires the user to "complete an initial boot-up process." (Doc. 9-2 at 2 ¶ 2). During the boot-up process, a screen with the title "Windows 10 License Agreement" pops up. (*Id.* at 5). Below that title are two parallel boxes, one of which contains Microsoft's software license terms and the other of which is Acer's end user license agreement. (*Id.*). The computer will not function unless the user accepts the agreement by clicking "Accept" at the bottom of the screen. (*Id.* at 2 ¶ 7, 5).

Acer's end user license agreement appears to relate only to software:

> This end user license agreement ("agreement") is a legal agreement between you . . . and Acer . . . for the software . . . that accompanies this agreement or is incorporated into this computer system, including any associated media, printed materials and related user electronic documentation which may be branded "Acer", "Gateway", "Packard Bell", or "E-Machines" (collectively, the "Software"). Agreements relating to any other product or topic are neither intended nor should they be implied.

4

(Doc. 9-2 at 7) (capitalization removed). The end use license agreement contains the same arbitration language as the limited warranty. (*Compare id.* at 7, 10–11, *with* doc. 9-1 at 10, 14–15).

## II.   DISCUSSION

Acer contends that its end user license agreement, the online limited warranty, and the paper documentation included with the computer's packaging all show that Ms. McCall agreed to arbitrate not only her claims about the computer's battery but also any dispute about whether her claims are arbitrable in the first place. (Doc. 8; doc. 9 at 16–23). Ms. McCall disputes that she entered any agreement to arbitrate at all, contending that the end user license agreement appeared to apply to the use of Windows 10, making the agreement to arbitrate with Acer inconspicuous. (Doc. 20 at 7–12). Ms. McCall does not address the limited warranty included in the computer's packaging and on Acer's website. (*See generally* doc. 20).

> The Federal Arbitration Act provides that
>
> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Federal Arbitration Act reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation

marks and citations omitted). As a result, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

An agreement to arbitrate can cover not only the merits of any claims arising from a contract between parties, but also "'threshold' or 'gateway' questions about the 'arbitrability' of those claims, such as questions about the enforceability, scope, or applicability of the parties' agreement to arbitrate their claims." *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1295 (11th Cir. 2022) (some quotation marks omitted; alteration accepted). Courts refer to an agreement to arbitrate threshold arbitrability questions as a "delegation agreement." *Id.* "Where an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts" may only "review a challenge to that specific provision." *Id.* at 1303 (alteration accepted). If no party challenges "the validity or enforceability of the delegation agreement . . . [,] the court must enforce the delegation agreement and send any challenges to the validity or enforceability of the primary arbitration agreement to the arbitrator." *Id.* at 1304. It is the responsibility of the party contesting arbitrability to "specifically challenge the delegation agreement's validity." *Attix*, 35 F.4th at 1295 n.8. If the parties formed an agreement to arbitrate and that agreement

applies to the dispute at hand, the court "'shall' compel arbitration and stay proceedings in federal court." *Id*. at 1294 (quoting 9 U.S.C. §§ 3–4).

In this case, both the end user license agreement and the limited warranty expressly provide that the parties "agree that any Dispute . . . between You and Acer will be resolved exclusively and finally by binding arbitration administered by the American Arbitration Association (AAA) and conducted in accordance with the AAA's Supplementary Procedures for Consumer-Related Disputes of the Commercial Arbitration Rules and the Consumer Due Process Protocol." (Doc. 9-1 at 14; doc. 9-2 at 10). Both the end user license agreement and the limited warranty define a "dispute" to include "any dispute, controversy, or claim arising out of or relating to (i) this Agreement, its interpretation, or the breach, termination, applicability or validity thereof; (ii) the related order for, purchase, delivery, receipt or use of any product or service from Acer; or (iii) any other dispute arising out of or relating to the relationship between You and Acer." (Doc. 9-1 at 15; doc. 9-2 at 11). And the AAA's rules, incorporated by reference, provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Doc. 9-1 at 59).

The Eleventh Circuit has held in the clearest terms that "[b]y incorporating this AAA rule about the arbitrator's 'power to rule on his or her own jurisdiction'

7

into their agreement, [the parties] clearly and unmistakably agreed to arbitrate threshold arbitrability disputes." *Attix*, 35 F.4th at 1298. Ms. McCall has not presented any argument about the validity or enforceability of the delegation agreement. *See id.* at 1304 ("A party specifically challenges the validity or enforceability of a delegation agreement if, and only if, the substantive nature of the party's challenge meaningfully goes to the parties' precise agreement to delegate threshold arbitrability issues."). Accordingly, an arbitrator must resolve Ms. McCall's challenges to the validity or enforceability of the arbitration agreement. The court therefore **GRANTS** Acer's motion to compel arbitration.

In addition to Acer's request for an order compelling mediation, Acer moves for dismissal of this action. (Doc. 8 at 1). The Federal Arbitration Act does not explicitly authorize dismissal of an action based on a determination that the parties agreed to arbitrate. *See generally* 9 U.S.C. §§ 3–4. Instead, the Act provides that if "the issue involved in such suit or proceeding is referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Id.* at § 3. The Eleventh Circuit has held that, where a plaintiff brings an action asserting substantive claims and the defendant prevails on a motion to compel arbitration of those claims, "the court should order that the action be stayed pending arbitration" instead of dismissing the action. *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698,

8

699 (11th Cir. 1992); *see also Attix*, 35 F.4th at 1294 ("If the parties' arbitration agreement applies to their dispute and no grounds render it invalid or unenforceable, the court 'shall' compel arbitration and stay proceedings in federal court. 9 U.S.C. §§ 3–4."); *cf. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC*, 807 F.3d 1258, 1264, 1268 (11th Cir. 2015) (holding, that, where the plaintiff's complaint sought only to compel arbitration and did not assert any substantive claims, the district court did not err in dismissing the complaint after determining that arbitration was appropriate). Accordingly, the court **DENIES** Acer's motion to dismiss this action. However, although no party has expressly requested a stay of this action, the court construes Acer's request for dismissal of the action as a motion for a stay and **GRANTS** the stay pursuant to 9 U.S.C. § 3.

### III.   CONCLUSION

The court **GRANTS** the motion to compel arbitration. The court **DENIES** the motion to dismiss but instead **STAYS** this case. The court **ADMINISTRATIVELY CLOSES** the case subject to reopening on the motion of either party following arbitration.

**DONE** and **ORDERED** this May 22, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE